# Exhibit A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

             v.                          23 CR 307 (LJL)

MICHAEL SHVARTSMAN,
GERALD SHVARTSMAN,
BRUCE GARELICK,

                  Defendants.           Arraignment
------------------------------x

                                        New York, N.Y.
                                        July 20, 2023
                                        12:10 p.m.


Before:

                  HON. LEWIS J. LIMAN,

                                        District Judge

                       APPEARANCES

DAMIAN WILLIAMS
     United States Attorney for the
     Southern District of New York
BY:  NICOLAS ROOS
     Assistant United States Attorney

TAI PARK
     Attorney for Defendants M. Shvartsman and G. Shvartsman

ALLEN FRANKEL
     Attorney for Defendant Garelick

2

1           (Case called)

2           MR. ROOS:  Good afternoon, your Honor, Nick Roos for

3    the United States.

4           THE COURT:  Good afternoon, Mr. Roos.

5           MR. PARK:  Good afternoon, your Honor, Tai Park.  I'm

6    here for Mr. Michael Shvartsman.

7           I just want to note for the record that Gerald

8    Shvartsman is still seeking New York counsel.  With the Court's

9    permission, I'd like to stand in for Mr. Gerald Shvartsman just

10   for purposes of arraignment this afternoon.  I have consulted

11   with the government on this, and they have no objection to that

12   process.

13          THE COURT:  Mr. Gerald Shvartsman, you consent to

14   going forward with Mr. Park for purposes of the arraignment

15   today.

16          DEFENDANT G. SHVARTSMAN:  Yes, sir.

17          THE COURT:  You understand that he's also

18   representing, I guess, your brother?

19          DEFENDANT G. SHVARTSMAN:  Yes, sir.

20          THE COURT:  With respect to any proceedings today, you

21   waive any potential claim of conflict, I take it?

22          DEFENDANT G. SHVARTSMAN:  Yes, sir.

23          MR. PARK:  Thank you, your Honor.

24          MR. FRANKEL:  Good afternoon, your Honor, Alan Frankel

25   appearing for Mr. Garelick for the limited purpose of this

1    arraignment.

2             THE COURT:  What does that mean, Mr. Frankel?

3             MR. FRANKEL:  I've been retained for this appearance,

4    but Mr. Garelick has not quite determined whether or not we are

5    going to be moving forward.  He hasn't retained counsel for the

6    New York action.

7             THE COURT:  How does he not move forward in connection

8    with this case?

9             MR. FRANKEL:  With respect to my firm, your Honor.

10            THE COURT:  Mr. Roos, why don't you inform me the

11   purposes of today's proceedings.

12            MR. ROOS:  Yes, your Honor.

13            All three defendants were arrested in the Southern

14   District of Florida on June 29, 2023, and were presented there.

15            Today the defendants need to be arraigned in this

16   district on the indictment.

17            I believe the Court should set the same bail terms

18   that were entered in Florida, but they should set them here for

19   the purposes of the Southern District of New York.

20            I can then give your Honor any other sort of update

21   you would like about the discovery or the nature of the case.

22            THE COURT:  That would be helpful.  I also intend to

23   set dates in connection with the case, including a trial date

24   for the case.

25            Let's proceed by way of arraigning the defendants

1     first.

2              Let me direct myself to Mr. Michael Shvartsman.

3              Mr. Michael Shvartsman, have you seen a copy of the

4     indictment?

5              DEFENDANT M. SHVARTSMAN:  I have, your Honor.

6              THE COURT:  Have you read it?

7              DEFENDANT M. SHVARTSMAN:  I have, your Honor.

8              THE COURT:  Would you like me to read it to you?

9              DEFENDANT M. SHVARTSMAN:  No.  Thank you, your Honor.

10             THE COURT:  Have you discussed it with Mr. Park?

11             DEFENDANT M. SHVARTSMAN:  I have, your Honor.

12             THE COURT:  How do you plead to the indictment?

13             DEFENDANT M. SHVARTSMAN:  Not guilty, your Honor.

14             THE COURT:  Let me address myself to Mr. Gerald

15     Shvartsman.

16             Mr. Gerald Shvartsman, have you seen a copy of the

17     indictment?

18             DEFENDANT G. SHVARTSMAN:  Yes, your Honor.

19             THE COURT:  Have you read it?

20             DEFENDANT G. SHVARTSMAN:  Yes, your Honor.

21             THE COURT:  Would you like me to read it to you?

22             DEFENDANT G. SHVARTSMAN:  No, your Honor.

23             THE COURT:  How do you plead to the indictment?

24             DEFENDANT G. SHVARTSMAN:  Not guilty.

25             THE COURT:  Let me address myself to Bruce Garelick.

5

1        Mr. Bruce Garelick, have you seen a copy of the

2    indictment?

3        DEFENDANT GARELICK:  I have, your Honor.

4        THE COURT:  Have you read it?

5        DEFENDANT GARELICK:  Yes, I have, your Honor.

6        THE COURT:  Would you like me to read it to you?

7        DEFENDANT GARELICK:  No, thank you.

8        THE COURT:  Have you discussed it with your counsel?

9        DEFENDANT GARELICK:  Yes, I have.

10       THE COURT:  How do you plead to the indictment?

11       DEFENDANT GARELICK:  I plead not guilty.

12       THE COURT:  Mr. Roos, tell me about your case.  What's

13   this case about?

14       MR. ROOS:  Yes, your Honor.  It's an insider trading

15   case, a violation of various securities fraud laws.  The

16   substance of the case is as follows:

17       The defendants are alleged to have traded on the basis

18   of material nonpublic information in the stock or security of a

19   publicly traded company, known as Digital World Acquisition

20   Corporation, or DWAC.  The alleged nonpublic information

21   related to the nonpublic target for a potential business

22   combination by DWAC.  DWAC was a SPAC.  SPACs identify a

23   private company that it will do a reverse merger or business

24   combination with.

25       Here, the nonpublic information that was material to

1    the market, as alleged, was the identity of the company, Trump

2    Media, that would be taken public through the SPAC.

3           The defendants are alleged to have learned the

4    confidential information about the target of the SPAC and then

5    traded on the basis of that material nonpublic information and

6    also tipped other individual who traded.

7           THE COURT:  Where do you stand with respect to

8    discovery?  What is the nature of discovery and where do you

9    stand with respect to it?

10          MR. ROOS:  First, your Honor, the government has begun

11   the process of stamping and organizing the discovery.

12          Before we produce anything, we need to enter into a

13   protective order with the defense.  We will share a copy with

14   them.  Because of the nature of the case, I think a fairly

15   standard protective order is appropriate here.  There is no

16   sort of special privacy concerns or anything.  Once we do that,

17   we will push out the discovery.  I'll give your Honor sort of

18   an understanding of what that looks like.

19          There will be about 2.5 million documents contained

20   within like a database load file format.  Those are emails,

21   documents, other communications.  And then there will be

22   several images of cell phones that were seized as part of the

23   investigation.  The government executed several search warrants

24   in this case, so we will be producing both the search warrant

25   applications and warrants themselves, as well as the materials

1   that were seized pursuant to the warrants.  There will also be

2   some other legal applications that we will produce as part of

3   discovery.

4          But, principally, we are talking about the roughly 2.5

5   million documents, as well as the electronic devices that were

6   seized that are not included within that number 2.5 million.

7          THE COURT:  When you mentioned that there are search

8   warrants, are there warrants also for the electronic devices?

9          MR. ROOS:  Correct.  All electronic devices that were

10   seized were pursuant to search warrants.

11          THE COURT:  Have the contents of the electronic

12   devices been searched?

13          MR. ROOS:  Yes.

14          THE COURT:  I take it that discovery is going to

15   include whatever was obtained through the exercise of those

16   warrants, is that right?

17          MR. ROOS:  Correct.

18          So, typically, the way we would approach is this, for

19   any device that was seized from a third party, we will give the

20   defendants the responsive take, meaning the materials that were

21   contained on the device that were responsive to the terms of

22   the search warrant, not the entirety of the device; just those

23   materials that were seized from the device.

24          For any device that belongs to one of the defendants

25   themselves, we will produce it to that defendant, the entirety

1   of the device, as well as the responsive take.

2            THE COURT:  Couple more questions.

3            Were there any postarrest statements?

4            MR. ROOS:  There were no postarrest statements.

5            THE COURT:  Besides the search warrants and the search

6   warrant affidavits, were there any searches incident to arrest

7   or any other law enforcement techniques used that could

8   potentially give rise to motion practice?

9            MR. ROOS:  There were some physical searches, meaning

10  premises or device searches executed as part of the case, not

11  at the time of arrest, but about a year prior to that.

12           So your Honor is correct that the search warrant

13  materials are a mix of Stored Communication Act warrants and

14  also the types of warrants that were executed at the time --

15  physically, but in person, but those searches didn't occur at

16  the time of arrest.  At the time of arrest they were just

17  arrested.

18           THE COURT:  Was there a parallel SEC investigation?

19           MR. ROOS:  There is a parallel SEC investigation.

20  They filed a complaint in this district.

21           THE COURT:  Is it fair to assume that you had an

22  access request to the SEC?

23           MR. ROOS:  That's correct.

24           THE COURT:  I take it that your discovery will include

25  the materials that you have obtained through the access

1   request, is that correct?

2         MR. ROOS:  Correct.

3         THE COURT:  How soon can you get me the protective

4   order or get the other side the protective order?  How soon

5   after the protective order is signed can you start to get the

6   defense the materials?  And how quickly after that can you

7   complete discovery?

8         MR. ROOS:  In terms of taking the questions in turn, I

9   think it's possible we can get the protective order to the

10  defense by tomorrow, if not by Monday.  I look at my colleagues

11  at the defense table.

12        Would a week be sufficient to review the protective

13  order and potentially work through things?

14        Let's say, sort of budgeting conservatively, we sent

15  it to the defense on Monday, they took a week, which would be

16  the following Monday, which I think takes us to the 31st.  At

17  that point say we filed a proposed protective order or, to the

18  extent there was a dispute, which I'm not anticipating here,

19  raise it with the Court.

20        The government can begin producing discovery as soon

21  as those 2.5 million documents have been imaged, which is a

22  process that the discovery vendor basically takes each native

23  file, converts it to a tiff file, so that it can apply a Bates

24  stamp to it, and then exports that from the vendor.  The

25  discovery is sort of pulled together.  We are at the stage of

 1    them of just tiffing and Bates-stamping the documents.

 2            Candidly, that is somewhat in the hands of the vendor.

 3    We asked them to move quickly.  I'm reluctant to give an

 4    estimate because it always turns out to be wrong, but this is

 5    not a case where we are still trying to try pull it together or

 6    get it loaded.  It's sort of on the system.  It's just doing

 7    the machine thing.  It could be a month, it could be a week.

 8    It's sort of hard to say.

 9            I guess if your Honor wants an estimate, I would maybe

10    say by the end of August is realistic.

11            THE COURT:  I take it you have already started that

12    process.

13            MR. ROOS:  Correct.

14            THE COURT:  Anything else I should know about

15    discovery?

16            MR. ROOS:  I don't believe so.

17            THE COURT:  Before I turn to the defense, why don't

18    you tell me what the bail terms are that were set in Florida.

19            MR. ROOS:  The majority of the terms are the same for

20    all three defendants.  If it's OK, I'll give your Honor the

21    terms that are the same and then I'll, after that, give the

22    individualized terms, which mostly just relate to cosigners and

23    bond amounts.

24            The common terms are:  Surrender all passports and no

25    new applications, regular reporting to pretrial services, no

1    contact with victims or witnesses, except through counsel.  We

2    have provided a list of individuals that we believe fall within

3    that category.  I am not going to put them on the record.  But

4    we have shared those with defense counsel.

5           Defendants may not communicate with each other, so

6    their codefendants, about the facts of the case or the case

7    itself, unless in the presence of counsel.

8           THE COURT:  Let me ask you just on the names.  I don't

9    particularly have any prurient interest, but should the names

10   be provided with the Court?  How is that going to be enforced

11   if it's just an agreement between the two of you?  Maybe you

12   could discuss that with the defense and let me know what your

13   position is.

14          MR. ROOS:  I'll tell your Honor from my experience

15   from other cases is, we share with the defense, it's usually --

16   it's not an unlimited number of people.  We have an agreement.

17   If there is an issue, we can then bring it to the Court.  The

18   list is in writing.  Sometimes the way these things are framed

19   is, we give them a list of names.  Other times it's sort of a

20   category of people with specific exclusions.  In this case it's

21   a mix.  We have identified employees working for two different

22   companies and then a list of several other names.

23          THE COURT:  Maybe what you can do is then just tell me

24   if the list is incorporated in a letter of such and such date

25   provided to the defense.  Then just indicate what that is, if

1    it's agreed by the parties what the letter is, then I think

2    that's sufficient for my purposes.  If we have shared names

3    with the defense with the lack of specificity, I can foresee

4    there being potential issues.

5          MR. ROOS:  Certainly.  That sounds reasonable.  We

6    have put them in an email.

7          I will take your Honor's suggestion.  We will put them

8    in a letter, and then maybe at the next court conference, or if

9    your Honor would like us to put a letter to the Court, we can

10   advise the Court of the date of the letter.

11         THE COURT:  Why don't you put it in a letter to the

12   Court with a date of the letter, who it's addressed to.

13         MR. ROOS:  Certainly.

14         THE COURT:  You were walking through it.  So no

15   communications with victims or witnesses, no communications

16   with each other, did you say?

17         MR. ROOS:  They can have communications with each

18   other, except about the case or the facts underlying the case,

19   with the exception that they are permitted to discuss those

20   topics in the presence of counsel.

21         No firearms.  Travel restricted to the Southern

22   District of New York, the Eastern District of New York, and the

23   Southern District of Florida.  No individual financial

24   transfers in excess of 5,000 without approval by pretrial

25   services and the United States Attorney's Office for the

1  Southern District of New York.

2          I'll note that a few caveats on this restriction.  The

3  first is, excluded from this limitation are legal fees and

4  payroll expenses, and second is, this is a restriction that

5  defense counsel has at least indicated they may need to have

6  some additional dialogue on because of other expenses.  This is

7  without prejudice to a future defense application to exclude

8  other transfers from the limitation.

9          Then no new financial accounts without prior written

10  approval of pretrial services and the United States Attorney's

11  Office for the Southern District of New York.  Those are the

12  common conditions.

13          In terms of individualized conditions, the bond amount

14  for Michael Shvartsman is $20 million; for Gerald Shvartsman,

15  $5 million; and for Bruce Garelick, $100,000.  The cosigners

16  for each of them are as follows:  For Michael and Gerald

17  Shvartsman, it is three financially responsible persons, one of

18  whom is their spouse, so each of them, their own spouse.  All

19  of them need to be interviewed by the Southern District of New

20  York.  They are permitted to have cross signers among

21  codefendants, the same cosigners.  For Mr. Garelick it is two

22  persons who are financially responsible, both of whom need to

23  be interviewed by the Southern District of New York.

24          In terms of property, the Court in Florida imposed a

25  restriction that Mr. Michael Shvartsman may not further

1   encumber apartment 2701, and Mr. Gerald Shvartsman may not

2   further encumber the property on 32nd Avenue.  Mr. Michael

3   Shvartsman was ordered to maintain residence in his current

4   apartment or in another apartment under renovation, and

5   Mr. Gerald Shvartsman was ordered to maintain residence in his

6   current apartment or a home under renovation.

7            I believe those are all of the conditions.  Obviously,

8   the defendants are permitted to be released subject to

9   fulfilling the conditions.

10           THE COURT:  Is there a deadline by which they have to

11   have fulfilled the conditions?

12           MR. ROOS:  Well, it was two weeks.  There were some

13   complications both with the posting of the bond in the Southern

14   District of New York, literally the order, and the fact that

15   they needed to be interviewed in the SDNY.  We had proposed two

16   weeks from the Court here entering the proposed order, such

17   that they can have their cosigners interviewed.

18           THE COURT:  I am going to confirm these terms with

19   each of the defendants, that these are the agreed terms.

20           And then, Mr. Roos, what I am going to request is that

21   I will orally set the terms of bail, but you will submit to me

22   a letter laying this out in more detail and specificity that I

23   can then sign.

24           MR. ROOS:  Would it be OK with your Honor if I put the

25   reference to the letter, saying the names in the same letter?

1          THE COURT:  Yes.  It might be helpful to get that by

2    the end of the day tomorrow, if you could arrange that.

3          MR. ROOS:  That's not a problem.

4          THE COURT:  Mr. Park, let me ask you whether the terms

5    as recited by Mr. Roos are accurate with respect to both

6    Michael and Gerald Shvartsman?

7          MR. PARK:  They are, your Honor.

8          If I may just qualify one aspect.  As Mr. Roos

9    indicated, we are in discussions with the government with

10   respect to the financial restriction on single transfers.  The

11   5,000 restriction is somewhat constraining, but we are in

12   discussions with Mr. Roos about that.  So hopefully we can

13   reach agreement and come back with a slight modification of

14   that restriction.

15         The only other caveat is that with respect to the

16   witnesses with whom the defendants may not have any contact,

17   some of them -- this may prove cumbersome because of the

18   relationships, business relationships among the defendants and

19   such witnesses.  Again, we are in discussions with the

20   government to see if there is ways to kind of ameliorate that

21   can so as to enable certain kinds of communications.

22   Obviously, nothing with respect to the facts or the case, but

23   some level of communications.

24         For example, a couple are employees, so we are trying

25   to work that out and hopefully, again, optimistic that Mr. Roos

1    and I can reach agreement on that and, if necessary, submit a

2    slightly modified order in connection with those two elements.

3         But, otherwise, your Honor, the terms as stated by

4    Mr. Roos are all accurate and agreeable to Mr. Michael

5    Shvartsman and Mr. Gerald Shvartsman.

6         THE COURT:  The way I would intend to handle the two

7    matters that you have referenced is that if there is agreement,

8    you can obviously submit a letter to me.  If there is an

9    application as to which there is not agreement, then I would

10    receive letters.  And in lieu of having the two of you come

11    into court and having your clients come up from Florida, I

12    would handle it by way of telephone conference to which the

13    public would have access.

14         Any objection to that?

15         MR. PARK:  Not at all, your Honor.

16         THE COURT:  Let me turn now to you, Mr. Frankel.

17         Do you agree with the terms as stated by the

18    government?

19         MR. FRANKEL:  Yes, your Honor.  Those terms are

20    accurate.

21         THE COURT:  I am not going to repeat everything that

22    Mr. Roos said, but I will order the defendants released on bail

23    on the terms as set forth by the government and to be further

24    set forth in a letter that the government will send to me by

25    the end of the day tomorrow.  Those terms are to be satisfied

1    within two weeks of tomorrow, which will be by August 4, absent

2    further application to the Court.

3         Before I turn to Mr. Park and Mr. Frankel with respect

4    to discovery and motions and anything else they would like to

5    bring to my attention, this is the first appearance that the

6    parties have had in this case in front of me, so I am going to

7    give a 5(f) order to the government.

8         I direct the prosecution to comply with its

9    obligations under *Brady v. Maryland* and its progeny to disclose

10   to the defense all information, whether admissible or not, that

11   is favorable to the defendant, material either guilt or to

12   punishment and known to the prosecution.

13        Possible consequences for noncompliance may include

14   dismissal of individual charges or the entire case, exclusion

15   of evidence and professional discipline, or court sanctions on

16   the attorneys responsible.

17        I will be entering a written order more fully

18   describing this obligation and the possible consequences of

19   failing to meet it, and I direct the prosecution to review and

20   comply with that order.

21        Mr. Roos, do you confirm that the government

22   understands its obligations and will fulfill them?

23        MR. ROOS:  Yes, your Honor.  I will acknowledge the

24   oral order and will review the Court's written order.

25        THE COURT:  And you will comply with it?

1             MR. ROOS:  Yes, your Honor.

2             THE COURT:  Mr. Park, what do you have to say and how

3     do you propose that I proceed?  You heard me that I would like

4     to set some dates, I think both for motions and a date for

5     trial.  It may be a date that is some ways off.  But I think,

6     given the nature of the case, it would make sense to just have

7     a date certain.

8             MR. PARK:  I think that's right, your Honor.  We would

9     appreciate that.

10            The one question I had, and I did not have a chance to

11    discuss this with Mr. Roos.  It was just inadvertence.

12            With respect to discovery, one question I did have is

13    whether there is a taint team for purposes of any privileged

14    materials that may have been swept up in the course of this

15    seizure and, if so, what the protocol would be that Mr. Roos

16    expects.  And I do apologize to him for not having raised this

17    with him beforehand, but it occurred to me as he was reciting.

18            THE COURT:  Why don't I ask Mr. Roos that question.

19            MR. ROOS:  The government did use a filter team to

20    screen out potentially privileged materials.  At this point I

21    believe that screening is done, so I am not sure it will really

22    have an effect on the litigation going forward other than to

23    acknowledge that there is some quantity of potentially

24    privileged materials that neither the government team

25    prosecuting the case nor the defendants in this case will have

1    access to, unless of course those privileged materials belong

2    to the defendants.

3           THE COURT:  Mr. Park, if there is more information

4    that you need, you can ask that of Mr. Roos separately.

5           MR. PARK:  Yes.  Thank you, your Honor.

6           Based on the description that I have been given about

7    the volume of discovery, I think, your Honor, we would, at a

8    minimum, like at least eight months within which to get our

9    arms around that discovery and conduct any investigations

10   resulting from it for now.  It's quite possible, of course,

11   that we may ask for a further extension as we get closer to

12   that eight months, but that would be my request.  By that I

13   meant, by way of trial readiness.

14          With respect to motions, I would ask that the Court

15   set an initial 90-day motion deadline from the time when the

16   government completes its discovery as to the seized materials

17   that were pursuant to search warrants or any other

18   investigative technique that could give rise to a motion for

19   suppression.

20          THE COURT:  Based upon the government's estimate, that

21   sounds like it would be sometime in the beginning of December.

22          MR. PARK:  I think for now, your Honor, that would be

23   fine, and we would obviously endeavor to satisfy that.  We are

24   obviously interested in moving this forward at a very efficient

25   clip so that we can remove this cloud over my clients'

1    respective heads.

2           One other issue that has not been covered but, as your

3    Honor noted, or as Mr. Roos noted, there is a parallel SEC

4    complaint.  By my review of the two documents, they

5    substantially overlap, if not relate to identical conduct

6    during the identical time period.

7           It is often the case that the government seeks to stay

8    those SEC proceedings.  I don't know if that's the government's

9    intent today with respect to the one, and I believe that case

10   has been wheeled out to Judge Gardephe.  So I don't know what

11   the government's intent is with respect to that.  But that may

12   be yet another motion practice that we would have to respond to

13   in that instance, obviously.

14          THE COURT:  I am not going to push the government to

15   tell me now what its position will be in front of Judge

16   Gardephe.  I'm familiar with that form of litigation.

17          I should put on the record, I have known Mr. Park for

18   a long time.  We were in the U.S. Attorney's Office together.

19   Mr. Roos I know is familiar with that form of litigation.  It's

20   well-tried grounds.

21          MR. PARK:  Thank you, your Honor.

22          THE COURT:  Mr. Park, actually, one other question.

23          With respect to Gerald Shvartsman, I am a little bit

24   apprehensive that he doesn't have counsel who is going to be

25   representing him all the way through.  Is there a day by which

 1    we know that an appearance is going to be made for his counsel?

 2         MR. PARK:  My understanding, your Honor, is that he

 3    has been active in speaking with potential counsel and is close

 4    to making a decision.  I expect that to happen within the week.

 5         THE COURT:  Great.  Thanks.

 6         Mr. Frankel, what is your view?

 7         MR. FRANKEL:  Your Honor, we are in agreement with

 8    Mr. Park's assessment.

 9         THE COURT:  Mr. Roos, do you have a view in terms of a

10    timetable for motion practice and for trial?

11         MR. ROOS:  I'd say we are available to try the case

12    whenever your Honor would like.  I am just trying to do the

13    math.

14         In terms of the motion schedule, with respect to the

15    trial date, it is seems that if the defense motions were due in

16    December, potentially with the motion briefing to be completed

17    sometime in January, that might be a little tight for a trial

18    date in March, if I'm doing the math right at what eight months

19    out from now is.

20         THE COURT:  If the defense made their motion at the

21    beginning of December, you would have two weeks to respond.

22    Let's build in a little bit of time for the holidays.  It means

23    that motions would be addressed by me in early January.  I

24    think we probably still could do something in mid-March on that

25    timetable.

1              Do you disagree?

2              MR. ROOS:  That's fine, your Honor.  It's totally up

3    to you.  I think we can be ready for it.

4              THE COURT:  Let me confer with my deputy.

5              Here is what I am going to do.  I am going to set a

6    date for motions to be filed by November 24.  It's a little bit

7    quicker than the 90 days from the date that the government

8    expects to complete its production of all the discovery.

9              I am setting that in part on the assumption that,

10   Mr. Roos, you will be able to turn over the search warrant

11   affidavits in your first batch of discovery material.

12             I'm setting trial for March 18 of 2024.  The

13   oppositions to the motions to dismiss -- I'm sorry.  Wrong type

14   of case.  The oppositions to the motions will be due on

15   December 8, and any replies on December 14.  I'll set a date

16   for a hearing early the week of December 18.  That way, you

17   will have done your work before the Christmas holidays, and you

18   will leave me with work to do over the Christmas holidays.

19             December 19 at 2 p.m. work for you, Mr. Park?

20             MR. PARK:  Yes, your Honor.

21             THE COURT:  Mr. Frankel.

22             MR. FRANKEL:  Yes, your Honor.

23             THE COURT:  Mr. Roos.

24             MR. ROOS:  That's fine, your Honor.

25             THE COURT:  If we are going to trial March 18, we are

23

1    going to do a final pretrial conference sometime the week of

2    March 11.  I am going to want requests to charge and motions *in*

3    *limine* by February 23 and responses to any motions *in limine* by

4    March 1, as well as responses to the requests to charge.

5            Let me give you a date for the final pretrial

6    conference.  March 13 at 2 p.m.

7            Mr. Park.

8            MR. PARK:  Fine, your Honor.

9            THE COURT:  Mr. Frankel.

10           MR. FRANKEL:  Fine, your Honor.

11           THE COURT:  Mr. Roos.

12           MR. ROOS:  That's fine, your Honor.

13           THE COURT:  Those dates are set.  I think that just

14   leaves the Speedy Trial Act.

15           Is there anything else from the government besides the

16   Speedy Trial Act?

17           MR. ROOS:  No, your Honor.

18           THE COURT:  Mr. Park.

19           MR. PARK:  No, your Honor.

20           THE COURT:  Mr. Frankel.

21           MR. FRANKEL:  No, your Honor.

22           THE COURT:  Government have an application?

23           MR. ROOS:  Yes, your Honor.

24           The government moves to exclude time between today's

25   date and the date of trial, which is set for March 18, 2024.

1   The reasons for the application are so that the government can

2   produce discovery, the defendants can review the discovery,

3   consider any motions they have, make motions, and prepare for

4   trial and so that, if appropriate, and if the parties wish to

5   discuss a potential disposition, they have time to do so.

6          The government respectfully submits and is making this

7   application that the interests of the parties outweigh the

8   public interest in an otherwise speedier trial.

9          THE COURT:  Mr. Park.

10         MR. PARK:  No objection.

11         THE COURT:  I take it that's for both defendants?

12         MR. PARK:  Correct, your Honor.

13         THE COURT:  Mr. Frankel.

14         MR. FRANKEL:  No objection.

15         THE COURT:  The Court will exclude time from today

16  until March 18, 2024 under the Speedy Trial Act, 18 U.S.C.

17  3161(h)(7)(A).

18         I find that the ends of justice outweigh the interests

19  of the public and the defendant in a speedy trial in that,

20  given the volume of discovery, the time is necessary for the

21  government to produce discovery, and for the defense to review

22  discovery, to consider and make potential motions, as well as

23  to prepare for trial, and for the parties to discuss whether a

24  potential pretrial disposition is appropriate and can be

25  reached in this case.

1                Anything else from the government?

2                MR. ROOS:  No.  Thank you, your Honor.

3                THE COURT:  Mr. Park.

4                MR. PARK:  Nothing for us, your Honor.

5                THE COURT:  Mr. Frankel.

6                MR. FRANKEL:  No, your Honor.

7                THE COURT:  I should say as, Mr. Park, Gerald

8   Shvartsman is looking for counsel; Mr. Frankel, your client is

9   thinking whether to retain you or to retain somebody else, that

10  whoever they retain should be told that I intend March 18 to be

11  a firm trial date.  I am not going to receive well an

12  application by an attorney that they'd like to come into the

13  case, but they just can't be available on March 18.  Find

14  lawyers who are available on March 18.  There are a lot of

15  really good lawyers out there.

16                Thanks, guys.

17                (Adjourned)

18

19

20

21

22

23

24

25