UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------

SECURITIES AND EXCHANGE
COMMISSION,

                     Plaintiff,

       - against -

BRUCE GARELICK, MICHAEL
SHVARTSMAN, ROCKET ONE
CAPITAL LLC, and GERALD
SHVARTSMAN,

                     Defendants.

**ORDER**

23 Civ. 5567 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

       In this Securities and Exchange Commission ("SEC") civil enforcement action, the United States (the "Government") has moved to intervene pursuant to Federal Rule of Civil Procedure 24, and seeks an order staying the case pending resolution of a parallel criminal proceeding pending in this District, United States v. Shvartsman, No. 23-cr-307 (LJL). (Dkt. No. 26)

       For the reasons stated below, the motion to intervene and the application for a stay will be granted.

## BACKGROUND

       On June 29, 2023, the SEC filed a complaint alleging that Defendants Bruce Garelick, Michael Shvartsman, Gerald Shvartsman, and Rocket One Capital LLC violated Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10(b)(5) thereunder, 17 C.F.R. § 240.10b-5.  (Cmplt. (Dkt. No. 1) ¶¶ 77-85)  The Complaint further alleges that Garelick violated Section 16(a) of the Exchange Act, 15 U.S.C. § 78p(a)(2), and Rule 16a-3 thereunder, 17 C.F.R. § 240.16a-3.  (Cmplt. (Dkt. No. 1) ¶¶ 86-88).

The Complaint is premised on the Defendants' alleged insider trading in the securities of Digital World Acquisition Corporation ("Digital World"), a special purpose acquisition company, prior to the October 2021 public announcement of a merger agreement between Digital World and Trump Media & Technology Group Corp.  (Cmplt. (Dkt. No. 1) ¶¶ 1-2)

On June 26, 2023, the Government obtained an indictment charging Garelick, Michael Shvartsman, and Gerald Shvartsman with federal securities laws violations.  United States v. Shvartsman, 23 Cr. 307 (LJL) (S.D.N.Y.), Dkt. No. 1 (Indictment).  The charges in the Indictment are premised on the defendants' alleged insider trading in Digital World securities prior to the October 2021 merger announcement.  Id. ¶¶ 1, 11.  Judge Liman set a "firm" trial date of March 18, 2024.  (Shvartsman, 23 Cr. 307, Dkt. No. 27 at 25).

In an October 23, 2023 submission, defendants requested that the trial be adjourned to June 2024, citing "the complexity of the case" and "the substantial volume of discovery produced to date," which included over a million pages of documents.  (Shvartsman, 23 Cr. 307, Dkt. No. 38 at 1-2)  The court denied the request.  (Shvartsman, 23 Cr. 307, Dkt. No. 39 at 1)  In a November 1, 2023 submission, defendants again requested that the trial be adjourned to June 2024, this time citing Garelick's counsel's competing professional obligations.  (Shvartsman, 23 Cr. 307, Dkt. No. 40 at 1)  In response, Judge Liman adjourned the trial in the criminal case to April 15, 2024.  (Shvartsman, 23 Cr. 307 Dkt. No. 41 at 1).

In the instant case, on September 1, 2023, the Government moved to intervene pursuant to Rule 24 of the Federal Rules of Civil Procedure and for a stay pending resolution of Shvartsman.  (Dkt. No. 26)  No Defendant has opposed the Government's motion to intervene (see M. Shvartsman Opp. (Dkt. No. 33) at 9 ("Defendant does not oppose the government's intervention"), but in a September 22, 2023 memorandum of law Michael Shvartsman opposes

the Government's stay motion, proposing instead that the Court permit discovery to proceed and allow the parties to raise "specific concerns on a moving forward basis if and when they may arise." (M. Shvartsman Opp. (Dkt. No. 33) at 23).[1] According to Michael Shvartsman, Fifth Amendment issues in the instant proceeding should be addressed by "preclud[ing] deposition[s] of Defendant[s] as well as any government witness who may similarly assert Fifth Amendment rights, while permitting document discovery to proceed." (Id. at 22).

Gerald Shvartsman "does not oppose" the Government's motion for a blanket stay, but asks this Court to "condition any order staying the proceedings in this matter on production by the SEC and United States Attorney's Office of all non-privileged materials in the SEC's investigative file in this matter." (G. Shvartsman Br. (Dkt. No. 34) at 2).

Defendant Garelick has joined in Michael Shvartsman's opposition to the Government's application for a stay. (See Garelick Sept. 22, 2023 Ltr. (Dkt. No. 35) The remaining Defendant – Rocket One – has not filed a submission addressing the Government's motion to intervene and application for a blanket stay.

## DISCUSSION

### I.     MOTION TO INTERVENE

Under Rule 24(a)(2), courts "must permit anyone to intervene who . . . claims an interest relating to the . . . transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2).

---

[1] The page numbers of documents referenced in this opinion correspond to the page numbers designated by this District's Electronic Case Files ("ECF") system.

3

As noted above, no Defendant has opposed the Government's motion to intervene.

"It is well-established that the United States Attorney may intervene in a federal civil action to seek a stay of discovery when there is a parallel criminal proceeding, which is anticipated or already underway, that involves common questions of law or fact." S.E.C. v. Downe, No. 92 Civ. 4092 (PKL), 1993 WL 22126, at *11 (S.D.N.Y. Jan. 26, 1993). Indeed, the Second Circuit has acknowledged that the Government has a "discernible interest in intervening in order to prevent discovery in the civil case from being used to circumvent the more limited scope of discovery in the criminal matter." S.E.C. v. Chestman, 861 F.2d 49, 50 (2d Cir. 1988). Accordingly, the Government's motion to intervene will be granted.

## II.  MOTION TO STAY

"A total stay of civil discovery pending the outcome of related criminal proceedings . . . is an extraordinary remedy." In re Par Pharm., Inc. Sec. Litig., 133 F.R.D. 12, 13 (S.D.N.Y. 1990). Nonetheless, the Second Circuit has stated that "[a] district court may stay civil proceedings when related criminal proceedings are imminent or pending, and it will sometimes be prudential to do so." Louis Vuitton Malletier S.A. v. LY USA, Inc., 676 F.3d 83, 98 (2d Cir. 2012).

District courts in this Circuit apply a "six-factor balancing test" in determining whether a stay of a civil case is appropriate where there is a parallel criminal prosecution:

> "1) the extent to which the issues in the criminal case overlap with those presented in the civil case; 2) the status of the case, including whether the defendants have been indicted; 3) the private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay; 4) the private interests of and burden on the defendants; 5) the interests of the courts; and 6) the public interest."

4

Id. at 99 (quoting Trustees of Plumbers & Pipefitters Nat. Pension Fund v. Transworld Mech., Inc., 886 F. Supp. 1134, 1139 (S.D.N.Y. 1995)).

The Second Circuit has emphasized, however, that such multi-factor tests "can do no more than act as a rough guide for the district court as it exercises its discretion." Id. They "are not mechanical devices for churning out correct results in overlapping civil and federal proceedings, replacing the district court's studied judgment as to whether the civil action should be stayed based on the particular facts before it and the extent to which such a stay would work a hardship, inequity, or injustice to a party, the public or the court." Id. "The district court's decision ultimately requires and must rest upon 'a particularized inquiry into the circumstances of, and the competing interests in, the case.'" Id. (quoting Banks v. Yokemick, 144 F. Supp. 2d 272, 275 (S.D.N.Y. 2001)). The party seeking a stay – here, the Government – "bears the burden of establishing its need." Id. at 97 (quoting Clinton v. Jones, 520 U.S. 681, 708 (1997)).

The Court conducts below the "particularized inquiry" required by the Second Circuit.

### A. Factual Overlap

"[T]he overlap of the issues in the criminal and civil cases . . . [is] a particularly significant factor" in determining whether a stay is appropriate, because "[w]here there is overlap, there is a greater concern about self-incrimination." S.E.C. v. Shkreli, No. 15-CV-7175 (KAM) (RML), 2016 WL 1122029, at *4 (E.D.N.Y. Mar. 22, 2016). Here, it is undisputed that the instant case and the related criminal proceeding are "premised on . . . identical conduct." (M. Shvartsman Opp. (Dkt. No. 33) at 6) Indeed, the federal securities law violations in the Complaint and the Indictment are brought against the same individuals and are premised on the same alleged insider trading transactions in September and October of 2021. (Cmplt. (Dkt. No.

5

1) ¶¶ 52, 63, 67, 68; Shvartsman, 23 Cr. 307, Dkt. No. 1 (Indictment) ¶ 20)  Because the civil and criminal proceedings are premised on the same alleged conduct, this factor weighs in favor of granting a stay.

  **B.** **Status of the Case**

   "A stay of a civil case is most appropriate where a party to the civil case has already been indicted for the same conduct." Trustees of Plumbers & Pipefitters Nat. Pension, 886 F. Supp. at 1139.  "The return of an indictment reduces the prejudice of a stay to an opposing party, because it means that the criminal process is underway and that the delay of the civil matter will not be prolonged." S.E.C. v. Abraaj Inv. Mgmt. Ltd., No. 19-CV-3244 (AJN), 2019 WL 6498282, at *2 (S.D.N.Y. Dec. 3, 2019).  Here, the Indictment was issued on June 26, 2023 – three days before the civil Complaint was filed.  (Cmplt. (Dkt. No. 1); Shvartsman, 23 Cr. 307, Dkt. No. 1 (Indictment))  The criminal case is currently scheduled for trial on April 15, 2024, about four months away.  Shvartsman, 23 Cr. 307, Dkt. No. 41 at 1.  Courts in this District have held that delays of a similar length weigh in favor of granting a stay.  See S.E.C. v. Blaszczak, No. 17-CV-3919 (AJN), 2018 WL 301091, at *2 (S.D.N.Y. Jan. 3, 2018) (granting stay and finding that four-and-half-month delay between issuance of stay and expected trial date was "not . . . an unreasonable amount of time"); Trustees of Plumbers & Pipefitters Nat. Pension, 886 F. Supp. 1134, 1139 (S.D.N.Y. 1995) (granting stay in May 1995 and noting that "the Criminal Case should be completed by the end of this year, which would not unreasonably prolong this case").

   Michael Shvartsman argues, however, that it is speculative at best when trial will actually take place.  (M. Shvartsman Opp. (Dkt. No. 33) at 16)  But given the requirements of the Speedy Trial Act, Shvartsman has a voice in determining when the trial will occur.

Moreover, while Michael Shvartsman and his co-defendants have repeatedly asked Judge Liman to adjourn the trial to June 2024 (see Shvartsman, 23 Cr. 307, Dkt. Nos. 38, 40), Judge Liman has rejected those requests and reiterated that the criminal case will proceed to trial on April 15, 2024. (Shvartsman, 23 Cr. 307, Dkt. Nos. 41)

In sum, given that the criminal case will proceed to trial on April 15, 2024, a stay would not unduly delay the instant case. This factor thus favors the issuance of a stay.

### C. The Plaintiff's Interest

"[T]he private interest of the plaintiff in proceeding expeditiously . . . is neutral [where] the SEC has taken no position on [the Government's stay] motion." S.E.C. v. Calabrigo, No. 22-CV-3096 (LJL), 2022 WL 4752427, at *5 (S.D.N.Y. Sept. 30, 2022). Here, the SEC takes no position on the Government's stay motion. (Govt. Br. (Dkt. No. 27) at 8) Where, as here, "[t]he SEC has taken no position on the Government's request for a . . . stay," the Court "need not consider [the SEC's] interests." Blaszczak, 2018 WL 301091, at *2; see also S.E.C. v. Treadway, No. 04 CIV. 3464 VM JCF, 2005 WL 713826, at *2-3 (S.D.N.Y. Mar. 30, 2005) (same). Accordingly, this factor is neutral.

### D. Michael Shvartsman's Interest

Michael Shvartsman argues that a blanket stay would prejudice his interest in "pursu[ing] an expeditious resolution of this case to defend against the extremely damaging allegations of fraud" set forth in the SEC's Complaint. (M. Shvartsman Opp. (Dkt. No. 33) at 15; see also id. at 7 (arguing that "every case deserves expeditious adjudication" and that the "Court should permit Defendant to take vigorous and prompt measures to begin the process of clearing his name"); at 9 (arguing that the "allegations in this case represent a continuing stain on Defendant's personal and business reputation"); at 11 (seeking the "expeditious litigation" of this

7

case); at 15 (stating that Michael Shvartsman's "interest is to pursue an expeditious resolution of this case")

Parallel criminal and civil proceedings – particularly involving high-profile matters that have attracted significant media attention – often have a devastating effect on defendants' professional and personal lives. See Treadway, 2005 WL 713826, at *3 (noting that such proceedings cast "a cloud on [defendants'] careers and their personal lives"). Accordingly, "a defendant has [a compelling] interest in 'clear[ing] his name . . . in a timely manner – not just when it is most convenient for the government.'" Blaszczak, 2018 WL 301091, at *2 (alterations in original) (quoting S.E.C. v. Block, No. 16-cv-7003 (LGS), Dkt. No. 41 (Nov. 1, 2016 Tr.) at 9).

Denying the Government's stay motion here, however, is not likely to meaningfully assist Defendant Shvartsman in obtaining an "expeditious resolution" of the SEC's allegations against him. As both Michael Shvartsman and the Government acknowledge, the individual defendants and the Government's witnesses in this case are likely to assert their Fifth Amendment rights against self-incrimination if served with deposition notices in the instant case. (See M. Shvartsman Opp. (Dkt. No. 33) at 22 (suggesting that "[t]he Court could preclude deposition of Defendant as well as any government witness who may . . . assert Fifth Amendment rights"); Gov. Reply (Dkt. No. 37) at 8 (stating that "it is likely that at least eleven potential witnesses in this case could or would invoke their Fifth Amendment rights against self-incrimination if the Defendant sought to depose them – including many witnesses not named but referenced in the Indictment")) Given the pending indictment against the Defendants, it is highly likely that any lawyer representing an individual whose conduct falls within the ambit of the Government's investigation would – in the absence of an immunity order or a non-prosecution

agreement – recommend that the client assert his or her Fifth Amendment rights in response to a deposition subpoena.  Accordingly, the individuals whose conduct is central to the SEC's claims against Michael Shvartsman are not likely to be available for deposition, making an "expeditious resolution" of the SEC's allegations against Michael Shvartsman extremely unlikely at this stage.

As to Shvartsman's argument that document discovery should proceed even in the absence of depositions, the Government has represented that it "has already produced [Rule 16] discovery in the criminal case – including all of the discovery it received from the SEC." (Govt. Reply (Dkt. No. 31) at 5; see id. at 5 n.4 ("The Government has produced to the defendants the entirety of the documents it has received from the SEC in this matter.")  The SEC-related material produced by the Government includes "all materials that the SEC obtained from third parties." (Govt. Br. (Dkt. No. 27) at 11)  Defendant Shvartsman acknowledges that the defense has "received massive amounts of data [in discovery] that it [is] struggl[ing] to organize." (M. Shvartsman Opp. (Dkt. No. 33) at 16)  Indeed, in the criminal case, defendants submitted a joint request to adjourn the trial date because of "the substantial volume of discovery produced to date," which by October 2023 included more than a million pages of documents.  (Shvartsman, 23 Cr. 307, Dkt. No. 38 at 1-2)  In sum, Defendant Shvartsman's request for document discovery does not justify denying the Government's stay motion, given the "massive" quantity of material already produced to the defense, including all material provided by the SEC to the Government.

Finally, as discussed above, the court in the criminal proceeding has set a firm trial date of April 15, 2024, and has rejected defense counsels' repeated efforts to adjourn the trial beyond that date.  (Shvartsman, 23 Cr. 307, July 20, 2023 Tr. (Dkt No. 27) at 25 (setting original trial date for March 18, 2024); Nov. 1. 2023 Memo Endorsement (Dkt. No. 39) at 1 (rejecting defendants' joint request to adjourn trial date from March 18, 2024 to June 2024);

Nov. 3, 2023 Memo Endorsement (Dkt. No. 41) at 1 (granting adjournment of trial date to April 15, 2024 but rejecting defendant's joint request for adjournment until June 2024))

Given all of these circumstances, Michael Shvartsman's interest in an expeditious resolution of the instant case does not require that the Government's motion for a blanket stay be denied.

E.   **The Court's Interest**

The Court has an interest in the "efficient resolution" of the instant case. S.E.C. v. One or More Unknown Purchasers of Sec. of Glob. Indus., Ltd., No. 11 CIV. 6500 RA, 2012 WL 5505738, at *4 (S.D.N.Y. Nov. 9, 2012). However, the SEC case "is likely to benefit to some extent from the [c]riminal [c]ase no matter its outcome," id., because the criminal case may "resolve issues of fact common to the civil case and may reduce the number of issues to be decided in subsequent proceedings in this case." Blaszczak, 2018 WL 301091, at *2; see also S.E.C. v. Contorinis, No. 09 CIV. 1043 RJS, 2012 WL 512626, at *3 (S.D.N.Y. Feb. 3, 2012) ("Courts in this district have consistently found that a defendant convicted of securities fraud in a criminal proceeding is collaterally estopped from relitigating the underlying facts in a subsequent civil proceeding."), aff'd, 743 F.3d 296 (2d Cir. 2014).  And in the event that Defendants are acquitted in the criminal case, "a stay in the action will streamline later civil discovery since transcripts from the criminal case will be available to the civil parties," Rosenthal v. Giuliani, No. 98 CIV. 8408 (SWK), 2001 WL 121944, at *2 (S.D.N.Y. Feb. 9, 2001), and "the evidence gathered during the criminal prosecution can later be used in the civil action." Trustees of Plumbers & Pipefitters Nat. Pension, 886 F. Supp. at 1140.  The Court's interest thus weighs in favor of granting a stay.

F. **The Public's Interest**

The Government argues that the public has "an important interest in ensuring that the defendants do not use civil discovery or motion practice in [parallel civil cases] to circumvent the well-founded restrictions that pertain to criminal discovery," particularly those restrictions related to witness statements that are found in the Jencks Act, 18 U.S.C. § 3500, and in Rule 16 of the Federal Rules of Criminal Procedure. (Govt. Br. (Dkt. No. 27) at 12)

Citing S.E.C. v. Saad, 229 F.R.D. 90 (S.D.N.Y. 2005), S.E.C. v. Chakrapani, No. 09 CIV. 1043 (RJS), 2010 WL 2605819 (S.D.N.Y. June 29, 2010), and S.E.C. v. Cioffi, No. 08-CV-2457 (FB)(VVP), 2008 WL 4693320 (E.D.N.Y. Oct. 23, 2008), Michael Shvartsman counters that the Government's professed interest in preventing defendants from doing an end-around the rules restricting criminal discovery amounts to nothing more than an attempt to preserve "prosecutors' . . . tactical advantage" over defendants. (M. Shvartsman Opp. (Dkt. No. 33) at 19)

Shvartsman's argument ignores the fact that the restrictions found in Rule 16 and Section 3500 were designed to protect the integrity of the criminal justice process by deterring efforts to tailor testimony, suborn perjury, fabricate evidence, and intimidate witnesses. See Cioffi, 2008 WL 4693320, at *2 (limitations on criminal discovery reflect concern that "'(1) the broad disclosure of the essentials of the prosecution's case may lead to perjury and manufactured evidence; (2) the revelation of the identity of prospective witnesses may create the opportunity for intimidation; and (3) the criminal defendants may unfairly surprise the prosecution at trial with information developed through discovery, while the self[-]incrimination privilege would effectively block any attempts by the Government to discover relevant evidence from the defendants'" (quoting Nakash v. U.S. Dep't of Just., 708 F. Supp. 1354, 1366 (S.D.N.Y. 1988));

11

SEC v. Nicholas, 569 F. Supp. 2d 1065, 1070 (C.D. Cal. 2008) (criminal discovery was "purposefully limited so as to prevent perjury and manufactured evidence, to protect potential witness from harassment and intimidation, and to level the playing field between the government and the defendant, who would be shielded from certain discovery by the Fifth Amendment").

And as the Government points out, the concerns about witness tampering are not merely hypothetical in the context of the instant case. The Government asserts that after agents approached and searched cell phones owned by several subjects of the Government's investigation, Michael Shvartsman's brother and co-defendant – Gerald Shvartsman – contacted an employee and told him that the alleged insider trading in Digital Media stock was "just a coincidence." (Govt. Reply (Dkt. No. 51) at 8 (quoting Ex. B (Dkt. No. 51-1) at 3))

The cases cited by Michael Shvartsman do not demonstrate that the granting of a blanket stay would be error. As discussed above, the Cioffi court acknowledged that the restrictions on criminal discovery are aimed at preserving the integrity of criminal proceedings, but concluded that it could not – at the outset of that case – "evaluate the validity and strength of the government's concerns relative to the defendants' interest in a prompt resolution of the allegations against them." Cioffi, 2008 WL 4693320, at *2. The circumstances here are different: as discussed above, "massive" document discovery has already been provided to Defendants; it appears likely that both the Defendants and the key Government witnesses would assert their Fifth Amendment rights in response to a deposition subpoena; a trial date in the criminal case has been set for four months hence; and the Government alleges that one instance of possible witness tampering has already taken place.

And in Chakrapani, the court found that while the public has "a clear interest in open and full discovery" in the SEC's civil case, "the balance of interests could turn in favor of a

discovery stay" to the extent that the process "is compromised by the legitimate invocation of constitutional privileges during discovery" by the defendants or by other relevant witnesses. Chakrapani, 2010 WL 2605819, at *11; see also Saad, 229 F.R.D. at 91 ("[U]ntil the criminal case is resolved, there is a high likelihood that invocations of the Fifth Amendment privilege will play havoc with the orderly conduct of all six of these depositions.").

Under the circumstances of this case, the Court concludes that "[t]he public's overriding interest in the integrity of criminal proceedings" outweighs any interest of Defendants Michael Shvartsman and Garelick in seeking to obtain discovery in this SEC action prior to the conclusion of the parallel criminal case. S.E.C. v. Archer, No. 16CV3505, 2016 WL 4371303, at *2 (S.D.N.Y. Aug. 10, 2016).

## CONCLUSION

For the reasons stated above, the Government's motion to intervene and motion to stay this case (Dkt. No. 26) are granted. This case will be stayed in its entirety pending completion of the parallel criminal case.

The Clerk of Court is directed to terminate the motion (Dkt. No. 26).

Dated: New York, New York
       December 12, 2023

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge